This is Mako Products. You know my eyes are not that great, those are not going to be very helpful. All these materials are in the briefs, too, and Mr. Grober, go ahead and put them closer to the bench, please. All right, Mr. Hokanson, are you ready to proceed? Yes, Your Honor. Good morning, Your Honors. My name is John Hokanson. I'm here representing today Mr. David Grober and Voice International doing business as Motion Picture Marine, the appellants in this case. With me today is Mr. Grober. You have before you today an appeal from a summary judgment of non-infringement and several appealable orders from the Central District of California. I first want to address three false assumptions of fact that went into the district court's June 2009 summary judgment order because they relate and impose certain criteria over the claim construction issue, so I want to address those false assumptions of fact before we get into the claim construction issues. First of all, you'll notice that the district court, the assumptions of fact were three. First, the district court assumed that all 38 of the claims of Mr. Grober's original patent included the words payload platform, and thus if the construction was such there was non-infringement, all 38 claims would be non-infringed. Second- Well, on that point, just so to clean it up, the district court was relying, was he not, on a stipulation or his understanding that the parties had agreed that if a certain claim construction arose with respect to payload platform, that would govern the whole question of infringement. Am I wrong about that? You're wrong about that, Your Honor, and that was the third point. I was, the third false assumption, let's get to that right now. If you turn- I'm looking at the claims and I'm having trouble finding any that don't have payload platform in them. Well, that would be- There may be one, there may be a few dependent claims here, but believe me, it's a pretty widespread term. Claim 31 does not have the word payload platform in it, and also one of the false assumptions of fact is that the payload platform beyond the, excuse me, the second sensor package beyond the payload platform- That's a method claim. Yes. Why don't you just get back to your main point and we'll stick with that. Yes. All right. The main point responding to Judge Crowe, in the transcript of the proceedings at the hearing when the district court judge made those statements, Mr. Lawson, who was Mr. Grover's attorney, deferred to Mr. Warwick, who then said, in response to the district court, virtually every claim except for maybe five or six required the payload platform. That was the basis of, or that was a statement made by Mr. Warwick, and Mr. Lawson, who was Mr. Grover's attorney at the hearing, agreed with that. That's true. Many of those claims have payload platform- Where does this all get you? Even if we would agree with, I think, everything you're getting at here, that means we affirm the district court except we reverse summary judgment with respect to these five other claims that are hanging out there, right? That would certainly be a result that would be justified by what we just said. Now, turning over to claim 38, which is a method claim, that claim does not require the payload platform to be on, excuse me, does not require the sensor package, the second sensor package, to be on the payload platform, so that claim also would be lumped in this group that- Let's get to the payload platform. That's your argument, isn't it? That is one of the arguments, your argument. You say the district court misconstrued that as a two-dimensional feature missing the rest of the platform which connects to the second sensor. Am I correct on that? That is correct. What's your evidence for that? The evidence is in the specification of the Grover patent itself, one of the points that the district court apparently missed was not understanding the significance of dashed lines. You'll see those in figure two, you'll see them in one of the other figures of the Grover patent. Hidden lines or dashed lines, the district court thought, well, it's ambiguous, he couldn't understand what that meant. If you look at the MPEP, it's very, very clear, MPEP section 60802, pages 600-15 on revision 7, which is the 2008 revision, there are two pages of standard symbols used in patent applications. The bottom right-hand corner of page 2 has this exact type of symbol. The problem I'm having with your argument, Mr. Hawkinson, and the point of emphasis that you're making is that we usually sort of give the benefit of the doubt to the district court. You may or may not be right that this is why the district court got it wrong, but my question would be, did you explain that adequately to the district court in terms of the argument about lines? I mean, is there something you can point to in the record that would show us that you had ignored it? If not, it's kind of hard for us to pick apart sort of the details of this analysis, right? Well, I'm sorry, Your Honor, I wasn't representing Mr. Grover at the district court, but I believe there are sufficient justification in the record on appeal. To answer your question, though, I would direct your attention to the patent itself. There are several places on the patent itself which have language that, in addition to the drawings, indicate quite clearly that the payload platform is not limited to a small part of the surface to which the camera is attached. And that language would be found, if you would turn to your appendix, page 148, down near the bottom of column 1. That language requires that there be a stabilized platform, and it includes- Are you referring to the specification? I'm referring to- Yes, I'm referring to- So what's the column and line? Sure. I'm referring to column 1, approximately lines 65 through 67. That can be found several places in the record. The place I'm looking at is the appendix, page 148. There, the stabilized platform is simply referred to as one holding sensing devices. There's no requirement that the sensing device be located only on a certain part of the top surface. The second- Let me interrupt you, just because the time is- Sure. Because so far, we haven't really gotten to what maybe I misunderstood, but I thought was really the nub of your argument with respect to claim construction, and that is the district court's reliance on the examiner's statement and the question about whether or not Mr. Grover accepted that or whatever. I understood that to be kind of the heart of the complaint you had with the district court's claim construction. Am I wrong about that? And if I'm- You're not wrong. If I'm right, why don't you address that briefly, if you wouldn't mind? I will address that. The district court incorrectly found that its claim construction was largely dependent on or shaped by the reexamination proceedings. This statement came in a separate paragraph out of the context of the rest of the order, and it was hit, the district court simply agreeing with Mr. Warwick's statement, and the falseness of that statement is pretty clearly revealed by what actually happened in the reexamination. Of the 38 original claims, five of those were amended, numerous claims, 33 claims were confirmed as is, including the single claim that the district court used to focus its opinion on, claim one. It had no changes to it, and the arguments made by Mr. Grover's attorney during the reexamination were entirely consistent with the claim construction that the payload platform is simply the structure which is stabilized. It's the structure which is stabilized. No, but referring now to the Welch reference, however, and the prior art, it seemed to me, my understanding, correct me if I'm wrong, was that the examiner relied heavily on his construction of the Welch prior art as having that number 16 be a payload platform, and your client, whose interpretation may have been somewhat different, at least didn't object to that, and it was on that basis, which you are now contending is incorrect, that the Right? I'm not contending that was incorrect. What we're talking about now is two more levels of confusion. First of all, if you look at- Wait, it's not incorrect? So you agree that in the Welch prior art, the structure label 16 was a payload platform? You agree with the examiner's conclusions with regard to reexam and his construction of Welch as prior art? The payload- That's a question that I think can be answered by yes or no. You can't answer that by yes or no? Well, Mr. Grover, okay, I was listening to two people at one time, and I don't want to make a mistake. I suggest you listen to the folks up here first. I'm trying to get her. With permission, would Mr. Grover answer that one question? I'm not an attorney. No. Please proceed. Okay. All right. Now, to answer the question, the answer is D. Mr. Grover's attorney then agreed with the examiner's initial position, but the point is that the examiner made those comments early on the reexamination and after argument withdrew those. Those initial comments did not apply to those claims that were confirmed. The point is that- The district court was incorrect? As I read the district court, he relied heavily on those observations and those conclusions by the examiner. Are you telling us that that was illegitimate because the examiner had withdrawn those contentions at some point in the process? No. The answer to that question is the district court misinterpreted the structures shown in the Welch patent. The district court thought that this little guy here, item 27, the pitch potentiometer, was attached to the structure called 18, platform structure. That is absolutely incorrect. A pitch potentiometer is a device that measures the angular rotation of a structure with respect to the axle. My question goes to whether or not the district court just made that up on his own or whether indeed he was relying on that finding and that conclusion by the examiner. Am I wrong that he was relying? He wasn't making this up on the fly. He was relying. He was accepting and adopting the examiner's conclusions in that regard. In a sense, he said he was relying on what an examiner said early on, but once the examiner clarified and understood and agreed with Mr. Grover's attorney that this item here, number 27, was not connected to the structure 18, but rather was connected to this little horseshoe-shaped bar, then the examiner realized that the language in claim one and the other claims that were confirmed did not have a potentiometer or a sensor, a second sensor, attached to the structure called the payload platform, but rather the structure, the sensor in the Welch patent was Mr. Hawkinson, you need to stay on that mic so that we pick up your conversation. Sorry, Your Honor. The reason this got a patent is because it had a second sensor attached to the platform is what you're telling us, right? That's one of the reasons, yes. And you're telling us that if the payload platform is perceived as simply a two-dimensional flat surface to which you attach the camera, you do not have then the point of novelty, the attachment to the second sensor for which this got a patent. Well, sort of. The second sensor package merely needs to be attached to the payload platform structure because in the Grover invention and device, the sensor that's in the second payload platform, the second sensor package, measures deviations from horizontal. So it doesn't make any difference where on this payload platform that sensor is positioned. It can be positioned on the top, which is the farthest away from this axle of rotation, in which case if it moves, it moves a greater number of inches than it would move if it was positioned closer to the axle of rotation. Would you take one second? It's unusual that we get discovery protests here. What was your concern over the discovery proceedings? The discovery proceedings were that Mr. Warwick had blocked discovery and that sanctions are appropriate in this case and a reversal or a remand to reopen discovery would be appropriate. Okay. You've consumed your time, Mr. Hokanson. We'll give you your five minutes back. Thank you, Your Honor. Mr. Benjamin, would you give Mr. Warwick an extra five minutes if he needs to use it? Mr. Warwick, you may proceed. Thank you, Your Honor. Brian Warwick on behalf of Mako Products. I think what makes the most sense this morning is to address first the term payload platform and then summary judgment followed by the other issues we raised on appeal, on our appeal. Could you start just briefly, though, in addressing the point that the other side started with at first, which is even if we were to affirm the district, as I understood it, even if we were to affirm the district court on claim construction, there's still all of these other claims out there that they are free to pursue and that there was no waiver of their right to do so. The problem with that argument is that the claims, they've never articulated what those claims are before the court. They've never stated, yes, even if we interpret the court's ruling correctly and believe that, yes, the payload platform is this horizontal structure, then they still infringe claims X, Y, and Z. They've never made that argument anywhere in the record. And once the court determined that there was summary judgment... Well, they've alleged all of the claims on the patent, right, and the district court didn't kind of make them pick and choose. Am I wrong about that? They alleged them generally in the complaint. They simply said they infringe. And so once the court set up, I believe, in the court's opinion, the court said, I believe that this all basically comes down to payload platform. That's the way I interpret it. Do you guys interpret it that way? And I said, well, other than maybe four or five. And the four or five are the incidental claims that don't specifically include the term payload platform, but they need the payload platform above to go down and further get to the elements that are patentable. And so the court asked us, is this really where we're going? And the fact that counsel for the plaintiff didn't object to that and the entire markman hearing from that point forward was focused exclusively on payload platform. Counsel, did you tell the judge that in order to have infringement, you have to infringe every claim in a patent, not just one? No, Your Honor. Really? Because I have a transcript here that says kind of the contrary. Judge asked you outright whether or not all the claims in the patent needed to be infringed in order for him to find infringement, and you said yes. I don't believe, I don't know what section you're referring to specifically, Your Honor. However, the section, maybe he was talking about in claim one, there's multiple sections of claim one. And to have a violation of claim one, you must have all the separate parts of claim one. And during that hearing, since we were talking exclusively about claim number one, my interpretation of the court's question then was, do you have to have all the requirements of claim one versus, you know, every claim in the patent? Certainly, I would not argue that we have to argue any more than we do. Go on to the payload platform, because the district judge does say in his order that it's nothing more than a horizontal surface. And he goes on to say it does not include the support structure to that horizontal surface, which, of course, in figures two and three, it clearly does contain the support structure beyond the two-dimensional horizontal surface. And the difference here is that, Mr. Grober, there was a patent reexamination proceeding before the PTO. And during that hearing – Well, wait. Do you acknowledge then, the chief judge's question is correct, do you acknowledge that figures two and three of the patent as originally filed absolutely, explicitly disclose a payload platform that is three-dimensional? No. The payload platform is not clear. Okay. Well, do you have your patent handy? My patent, Your Honor? You have a copy of the patent? I have a copy of the patent in the file. I don't have it – You don't have a copy of the patent, for goodness sakes? This is a patent appeal. Yes, I have. So why don't we look at figure three? All right. Good. Figure three, I would like you to identify for me what in figure three is the payload platform. I don't believe the payload platform is shown in figure three. I think it's shown in figure two. Well, no, it's surely shown in figure three. Column five describes figure three in detail. As I understand it, you acknowledge in your briefs throughout that the camera platform and the payload platform are words used interchangeably in this patent, correct? In the 662 patent, correct. Right. So you're saying figure three does not identify a camera platform? Let me help you. I'll get you right to the point. Look on column five, line 30. I'm sorry. I have finally found the correct figure three. Column three, lines 29 to 31. This is describing figure three. Correct. It says the control system also receives data from sensor package B located on the camera platform. So you understand, as I do, that this patent explicitly discloses sensor package B is located on the camera platform, right? Correct. Now let's look at figure three. Sensor B, camera platform is number 22. Keep that in mind. Number 22 points only to that top flat surface. Under the district court's construction, that would be the only thing that's the camera platform. Aha, but the spec just told us sensor B is located on the camera platform. And where is sensor B in this picture? Below the risers on the second level of what is clearly a three-dimensional structure. The space for the housing for the camera is 22, and it also contains down to 23. But the fact that it is a horizontal flat surface conforms to the court's interpretation. Yes, except that the specification requires that sensor B in this picture is located on the camera platform. Is sensor B located on that top flat part? No. No. No, it's not. It's located on the bottom of the three-dimensional structure. So how could we interpret this patent any differently than to say sensor B is located on the camera platform, which now clearly and explicitly includes more than just that top flat surface? But the two flat surfaces you're referencing are parallel to one another, Your Honor. And when they're parallel to one another, they move with one another. What Mr. Grover's interpreting, the Mako device has the patents located within the legs of the gimbal structure. And that's different because Welch had... Counsel, we're not talking about infringement. All we're trying to figure out... So I don't care about the Mako device. What we're trying to figure out is what this claim term means. And we don't look to the Mako device to figure out what it means. We look to the clear language of the patent and the specification. And so I would like an answer from you. Does this sentence indicate that sensor B is located on the camera platform, which we both know it does because the sentence says it expressly, and sensor B is clearly not on that top flat surface? I believe that the parallel flat surface is distinguishable in this configuration. Is that parallel flat surface part of the payload platform? As defined by the court, yes. But here, if you look at it as to figure 22, it's located on the payload platform. Are you referring now to figure 2? Yes, Your Honor. Okay. It's figure 2. If you look, there's different variations. In figure 2... Okay, fine. So I'll grant you. I'll grant you that in figure 2, the sensor is located on the payload platform. Great. But it's also located on the payload platform in figure 3. And figure 3 shows the payload platform as something other than a singular flat surface of two-dimensional nature. Well, Your Honor, the payload platform in figure 3 is a parallel. It's just a deeper platform. What does that have to do with anything? Okay, well, it's located on something parallel to the payload platform. No, that's not what the specification says. The specification expressly says it's located on the payload platform. So this must be part of the payload platform. Correct, which is a horizontal flat surface. It's just a deeper one instead of being on the top of a thin one. Wait, but doesn't that depth imply a third dimension? No, they move... No? Wait, okay, so you've got width and you've got length. Now we've just added depth. How many dimensions does that total? If you have a flat surface, a metal flat surface as the court defined the term, and you place it on a...and it's one inch and it's placed here, or if it's five inches and placed here, it's going to be the same difference. In that particular configuration, it's just simply a bigger platform. That makes no sense. The distinguishing factor here that the court relied on was not simply the language in the patent, but the narrowing of the language in the patent before the PTO, and I think that's what the court needs to focus because that's where the trial court focused. The court found that when he looked at the Welch patent, we made the same argument. In the reexamination proceedings, we said the Grover device is exactly like the Welch device, and the sensors located on the Welch device are on the gimbal structure, and therefore it is anticipated by the prior art. And the first patent examiner agreed and dismissed 21 of the 38 claims. On reexamination, though, Mr. Grover said, no, no, no, wait, the sensors located in the Welch patent on the gimbal structure are different than my device, and they're different on my device because they're not located on the payload platform. And the court went on to look at the PTO, and the PTO, when they examined it, he says, I can't tell under Welch where they're located, but in the description of Welch, it said they're located, quote, and the base structure. And the PTO said, well, if it's between the platform and the base, it's not on the base. And therefore, the 662 patent has a distinguishing fixture from Welch. But when the examiner allowed the patent, the allowance says figure 1, this is a quote from the appendix at 223, which is the examiner's allowance, where he has now determined figure 1 of Welch shows that sensor 27 is fixed to the frame structure of which platform structure 18 rocks within, and sensor 27 is fixed to the base structure 14 rather than platform structure 18. That's correct. They distinguished Welch by saying Welch is on the gimbal structure. It's on the structure of the device between the horizontal platform and the base. And they said because of that, it was important, because the patent examiner actually said, you know, the examiner notes that neither the patent owner's argument or the requester's argument is found persuasive because figure 1 of Welch does not clearly show whether sensor 27 and 29 are fixed to the payload platform or not. And they went on then to say, but what does the statements within Welch specifically says? That the sensors are mounted between the platform and the base. And if it says specifically it's between the platform and the base, it cannot also be on the platform. Thus, Welch... The examiner says being mounted between the platform and the base. Thus, Welch does not teach... This is the examiner's holding. Thus, Welch does not teach the second sensor package fixed to the payload platform. That's how they overcame the rejection. I completely agree. My argument must not be clear. The fact he was able to skirt Welch by saying my sensors are different, they're not on the gimbal, they're on the payload platform, got them around Welch. Sure, so he is absolutely narrowly limited to asserting a claim against somebody who has the second sensor fixed to the payload platform. I don't understand them to be disagreeing with my statement. I don't understand them to have represented anything different to the district court. They're asking the district court to rule that the structure goes beyond the horizontal metal plate... No, yes, they're asking the district court to say it has to be fixed to the payload platform. You and they just disagree over what the payload platform is. That doesn't mean that they made some sort of disclaimer in here because their statements are crystal clear. It's not attached to the payload platform. But to rule that the payload platform goes beyond the horizontal structure, as the court did, would essentially then make them violate Welch. Would comply with the patent specification. They would violate Welch then. How would that violate Welch? Because Welch shows sensors located on the gimbal structure. And the only reason they got around Welch was they said ours aren't on the gimbal structure, it's on the payload platform. The PTO said that's fine, it's different, it's distinguishable. But now they're saying, no, no, we want it... The Mako head is just like Welch. The sensors located in the Mako head are on the gimbal structure. And that's why the court said, it's just like Welch, no infringement. You got around Welch... Look at figure three with us. Where is the gimbal structure? The gimbal structure is everything between... It's not a defined term, but it's everything between the platform and the base. So we probably have a difference of how we define the gimbal structure too, don't we? And that's part of the problem. I always thought the gimbal structure was internal rotating gears that offset each other a bit. Not fixed structures. Am I right on that? Yes, and part of the confusion comes from there is a significant body of prior art. Because gimbals are used for military purposes. That's how they fix targeting systems inside F-16s. Gimbal structures are also used in antenna situations. But you're saying the gimbal structure isn't this gyroscopic gears. You're saying it's anything except the platform. Think of a universal joint... Are we going to be back here on gimbal structures, trying to define them too? What the court did, I think, was very smart. Because what it did was it backed into the definition by using Mr. Grober's own statements to the PTO. And by doing that, he said, under Welch, Welch specifically states that the sensors located here are on the gimbal structure. And it said that because it said the sensors are located between the payload platform and the base. And if it says it's between it, it can't be on it. And so the court said, well, if that's the case, then we have to define it. Okay, you've made that point. Let me ask you really, your time's getting away. You marked a lot of the deposition testimony for attorneys' eyes only. Of course, depositions have to go to the other side's experts as well. Did they get to see them? Yes, Your Honor. In the briefs, they talk about Mr. Grober being excluded from the proceedings. His expert and his lawyer were in the deposition the entire time and were present. The difference is that Mr. Grober himself is the primary competitor of my client. And to show the inner workings of your device to your primary competitor is not required under the law. And so we have excluded Mr. Grober from the courtroom, but his lawyer from the deposition testimony of the expert as to the inner workings of the Mako Head, because the Mako Head does not have a patent to protect it. The Mako Head is a trade secret. And they seal it up and they put paint around it and they make sure nobody can get in there to look at the system. Yes, and the court enters a protective order and then everything's available within the confines of the lawsuit. Correct, and his lawyers had full access the entire time. The only difference is Mr. Grober wants to represent himself pro se. And so he's angered that he's not able to write his brief because he personally doesn't have access to all the same information that his lawyers do, and therefore he has to pay a lawyer to examine the information. And that's not a discovery abuse. He is a primary competitor and inventor. If he got to see the inner workings of the Mako Head and then went out and invented a similar device, the Mako doesn't have a patent to protect it from patent infringement. Rather than reserve the remainder of my time, I'll just go ahead and address the other additional argument that we make, which is— Well, can I just ask you before, just to clean up, if we were hypothetically to reverse, to disagree with you on the claim construction, where does that leave us on all the other issues? Obviously the Rule 11 probably backs away, but what about the discovery and so forth? Do you assume that if we were to reverse on claim construction, discovery would be reopened again for everything, potentially? Potentially, Your Honor. And as I stated, the plaintiffs have yet to articulate how, assuming the court's interpretation. Let's say reverse on that. Then we would go back and address those issues that remain, if at all. I mean, the interesting part is— So there's nothing else we would have to cover on this appeal with respect to discovery or so forth? Essentially, if this court were to reverse the court's interpretation of payload platform and summary judgment, we would have to go back and essentially start this seven-year litigation over. So, yes. The final argument is that— One quick question on the personal jurisdiction. The trade show happened in California, right? Correct. Do we have any problem then on personal jurisdiction, since the major facts of infringement are occurring in the jurisdiction where the case was brought? And clearly the company that the individuals were present at the trade show has been a party to this case and did not challenge personal jurisdiction. We're talking about the individual people being sued in their individual capacity for conduct in California. And they were not in California on their personal conduct at all. It was only as officers of the company at a trade show where they represented the company. So, therefore, there was no context in their personal individual capacities with the state of California to justify long-arm jurisdiction. The final point I'd like to make is regarding the conflict and the timing of Rule 11. Had Mr. Grober had access or attempted to achieve access to the inner workings of the make-away, he would have seen, prior to filing his lawsuit, where the sensors were located. He would have seen that the make-ahead doesn't have two sensor packages, it has three. He would have seen that they're located on the gimbal structure, not on the payload platform. However, this lawsuit was filed with a simple statement that the make-ahead infringes the patent. And there was no analysis by an attorney, separate from Mr. Grober, who is not an attorney, done prior to the filing of the case. And what this has led to is an allegation that all 36 of the 38 claims were alleged to be infringed without ever looking at the inner workings of the device. This is the equivalent of Apple suing Microsoft or IBM because they have two laptops that look similar on the outside. It's a complicated device with electronic devices that are minuscule. The only way you can determine whether it infringes is to look at the inner workings of the device. The statements throughout the brief are that we did enough by going to a trade show and seeing the device operate at a distance. We were able to walk up really close to it and we were asked some questions. The questions they asked were not of the electronics engineers and experts necessary to design the equipment. They were simply the people who worked at the company who talked generally about, yes, it maintains level. This is a direct violation to this court's dicta, or not dicta, directive in the Juden case and in VIEW Engineering, which specifically says before you file a patent infringement lawsuit, which on average costs a million dollars to defend, before you file that, you should make sure that they infringe. A lawyer must sit down and go through the claim. Just out of curiosity, if it turns out that you do infringe, you totally and utterly infringe, they're 100% right on claim construction and you infringe, does it really matter if they didn't do an investigation first? No. And that's part of the problem. The Barber case that the court relied on says you can't do a Rule 11 motion after summary judgment. However, the well-plaid complaint rule states that if they have a meritorious claim, it doesn't matter whether they did any pre-suit investigation at all. And so you have this question of a direct conflict. One says you can't do it after summary judgment, and the other one says if you do it before summary judgment, it's premature. So we have a conflict. Thank you, Your Honor. Your Honor, addressing the questions raised in reverse order on the Rule 11 motion, there are three dates that are important in the related activities, October 18, 2008, October 19, 2008, and June 2004. June 2004, October 18, 2004, the date the complaint was filed, October 19, 2004, the date at which this photograph was taken. This is the technical award ceremony. Is this in the record? Yes, it is. The pictures are in the record. June 2004, Mr. Grober finds at the Cine Festival one of the Mako heads. It's there at his show. He inspects it. He's familiar with this. He goes back and talks to his attorney, Mr. Krieger, and four months, and he's conversing back and forth. Mr. Krieger and Mr. Grober, during that four-month period, generate approximately 15 hours of billable time on analysis on whether there's an infringement or not. They conclude that there is an infringement. Mr. Krieger, a licensed attorney, concludes that. The complaint is prepared. It's filed on October 18th, the day before the award ceremony, with the view that, to be absolutely positively certain, they are not going to serve the complaint until after they go to the Academy Award inspection event and take one last look at it. You'll see in these pictures, here's Mr. Klein, Jr., one of the individual hoped-for defendants, and on the left, Mr. Krieger, then Mr. Grober's attorney, who are discussing, not with some employee but one of the principals, Mr. Klein, about the Mako head, which is shown in the right. So the complaint was served then the following day, I believe, the 20th. So the point is there was a very clear and deliberate analysis made. The attorney relied on statements made by Mr. Grober, who had previously conducted a very thorough evaluation. So I think that will easily withstand any Rule 11 problem. Directing your attention to the other questions, there was the original June of 2009 order. That was a sua sponte order granting non-infringement. The plaintiffs then wanted to have that reconsidered, and out of that came the judge's complaint or thought that supposedly in its reply brief the plaintiffs were supposed to then justify infringement. Well, the reason they didn't provide any summary judgment motion of infringement and didn't lay out all the details for a summary judgment motion was because of Mr. Worumitz's blocking of discovery. And at that stage, all they wanted to do was to overturn the judge's sua sponte ruling of non-infringement. This was not their duty, they were not on notice to, and they did not intend to, and the attorney Lawson clearly showed that his objective was not to prove infringement there. They were just trying to defend themselves against this sua sponte ruling of non-infringement. Now, to respond to Chief Judge Rader's question about a gimbal, there is some sloppy language there. If you go to the essence of this gimbal structure, there are three structures and they're connected. There is a base, there is the true gimbal structure, which is in the middle, and then there is the third that's attached to it, and it's a single piece. The way that you tell the pieces and how they operate is the base has a single axis, the center part is a structure that has two axes, one of which is attached to the base, and the other of which is attached to the so-called payload platform or the stabilized structure. In the Grover invention, he puts a level sensor on the top one and a motion sensor on the base, and he takes those signals and then he generates signals to motors that control the two axes. So if the base pitches, goes forward or goes backward, that's a pitch, then the motor that controls the axle that deals with pitch rapidly makes the same amount but opposite direction rotation of the top surface so that if the base pitches, the stabilized platform will go in the opposite direction so it can maintain its horizontal position. Similarly, the other axis, the one that's perpendicular, measures roll. So instead of going up and down, back and forth, roll is that kind of a motion. And that part of the sensor on top of the, or that aspect of the sensor in the second payload platform, then together with the motion sensor attached to the base, will generate a signal to the motor that controls the roll motion. Yes, sir. Time has expired. Thank you, Your Honors. Thank you.